IN THE UNITED STATES DISTRICT COUT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| MICHELLE D. PHARR | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | AMENDED COMPLAINT |
| | ) | |
| Vs. | ) | Case Number 2:12cv-00036 |
| | ) | |
| | ) | |
| | ) | |
| RAJNISH K. JAIN; and | ) | |
| | ) | |
| LANDMARK HOTEL GROUP, LLC | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT

**Comes now the Plaintiff Michelle D. Pharr** filing suit against the

above named Defendants, and for cause of action states as follows:

1. Plaintiff Michelle D. Pharr ("Plaintiff" or Mrs. Pharr) brings this civil action

pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e,

et seq., and Civil Rights Act of 1991. 42 U.S.C.  § 1981a, for relief from discrimination

and sexual harassment.

2.  Defendant Rajnish K. Jain ("Defendant Raj Jain") discriminated against Plaintiff on the basis of her sex (female) and subjected her to sexual harassment, a hostile work environment and retaliation during the course of her employment beginning on or about 1992.   That Mr. Jain is the owner of Landmark Hotel Group and the employer of the Defendant and it is his personal conduct that caused this action.  That the Defendant was the employer of the Plaintiff beginning on or about 1992 until December 23, 2011.

3.  Defendant Landmark Hotel Group, LLC ("Defendant "LHG") discriminated against Plaintiff on the basis of her sex (female) and subjected her to sexual harassment, a hostile work environment and retaliation during the course of her employment.  That Landmark Hotel Group is the " Alter Ego" of Raj Jain and an employer entity since about 2005.  Prior to this date the company was called Benchmark Hotel Group and was created on or about 2001 or 2002 and thus changed in 2005 to Landmark Hotel Group.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-16, 2000e-5(f)(3).  Further this Court has jurisdiction over this complaint because it presents a question of law, 28 U.S.C. § 1331.

2

5. Venue lies in this court because Plaintiff was employed by Raj Jain and LHG. LHG is a registered Limited Liability Company of Virginia with it's principal office registered at the primary residence of Raj Jain located at 1632 Spring House Trail, Virginia Beach Virginia. LHG conducts it's business and holds offices and keeps all business records at 4453 Bonney Road, Virginia Beach, Virginia. Raj Jain is a resident of Virginia, residing at 1632 Spring House Trail, Virginia Beach Virginia and conducts his business from both his home and the LHG Corporate Offices located at 4453 Bonney Road, Virginia Beach Virginia. Discriminatory actions and decisions took place in the Eastern District of Virginia, and the records concerning the Plaintiff's employment, upon information and belief, are maintained in the State of Virginia. 28 U.S.C. §1391 and 42 U.S.C. § 2000e-5(f)(3).

6. That this case is a mater of Federal Question and Violations of Title VII occurred in North Carolina and South Carolina.


## EXHAUSTION OF REMEDIES


7. Plaintiff timely contacted the United States Equal Employment Opportunity Commission ("EEOC") and filed (through counsel at that time) a complaint on May 23, 2011, against her employers, LHG and Raj Jain alleging discrimination based on sex, retaliation and a hostile work environment.

8.  Plaintiff has exhausted all of her administrative remedies.  On September 29, 2011, the Plaintiff was contacted by the EEOC conducting an investigation of the chargers.  Upon request by the investigating agent of EEOC, the Plaintiff, pro se, provided the EEOC with twenty eight pages of documentation that supports the claims set forth in this complaint against Landmark Hotel Group and Raj Jain.

9.  On October 13, 2011, the EEOC mailed Plaintiff a Notice of Right to Sue ("Conciliation Failure"), which provided her with 90 days from receipt of that notice to file her lawsuit.

10. Plaintiff hereby filed the original complaint on January 13, 2011 in this court as required by the EEOC rules and regulations being with in 90 days after receipt of the EEOC's notice of her right to sue.

11. That the complaint set forth herein constitutes "on going" harassment as defined by the EEOC and that all accounts of sexual misconduct, harassment, and abuse, beginning in 1992 through 2011 have been filed in a timely matter according to the EEOC and as a matter of law and the Plaintiff's Civil Rights pursuant to Title VII are to be heard before this court and before a jury. (A copy of the EEOC Timeline for Filing is attached as **(Exhibit B)**

4

## PARTIES

12. Plaintiff is a United States citizen, currently and at all times, domiciled in the state of North Carolina, Dare County, 533 West Ocean Acres Drive, Kill Devil Hills, North Carolina, 27948. The Plaintiff was, at all relevant times, an employee of Rajnish K. Jain and Landmark Hotel Group and predecior Banchmark Hotel Group.

13. Raj Jain is a United States citizen, currently domiciled in the state

Of Virginia, 1632 Spring House Trail, Virginia Beach, Virginia. In 1983, Raj Jain purchased his first hotel in the Outer Banks of North Carolina. In the last twenty years, he has developed/acquired over 75 million dollars in hotel assets. Raj Jain is the Founder and Chairman of Landmark Hotel Group, LLC. He was President and the managing member and during the Plaintiff's employment, Raj Jain maintained 100% control over all financial and operating decisions for the company. He is married to his wife Suchetta Jain and has one son Akhil Jain. The Defendant is an employer by definition pursuant to 42U.S.C. § 2000e(b) an employer *is* a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person. Pursuant to 42 U.S.C. § 2000e(a), that a "person" includes one or more individuals, governments, governmental agencies, political subdivisions,

labor unions, partnerships, associations, corporations, legal representatives, mutual

companies, joint-stock companies, trusts, unincorporated organizations, trustees.

**An Affidavit from Warren Smith** is provided for verification of Mr. Jain's employer

status as pertaining to this case. **(Exhibit C)**

Landmark Hotel Group, L.L.C. engages in the management, ownership, and

development of hotels in Virginia and North Carolina.  The company was formed July

26, 2001 and is based in Virginia Beach, Virginia. The corporate office and company

records are held at 4453 Bonney Road, Virginia Beach, VA 23462.  The Defendant is

an employer by definition pursuant to 42U.S.C. § 2000e(b) an employer *is* a person

engaged in an industry affecting commerce who has fifteen or more employees for each

working day in each of twenty or more calendar weeks in the current or preceding

calendar year, and any agent of such a person.  Pursuant to 42 U.S.C. § 2000e(a), that a

"person" includes one.or more individuals, governments, governmental agencies,

political subdivisions, labor unions, partnerships, associations, corporations, legal

representatives, mutual companies, joint-stock companies, trusts, unincorporated

organizations, trustees.  **A Landmark Hotel Group Company Profile is attached.**

**(exhibit A)**

# FACTS

14. Plaintiff incorporates all information and allegations contained in paragraphs 1 through 13 as if fully set forth herein.

15. The Plaintiff was interviewed and hired by the Defendant on or about 1992, thus being the beginning of an Eighteen Year career working for Raj Jain.

16. Mrs. Pharr was at that time married to her first husband, Preston Sears Jr. and was aka Michelle Sears.

17. The Plaintiff was self motivated to succeed over a disadvantage of lacking a formal education. She put in long hours and immersed herself in every aspect of the hotel. She excelled at the job and was immediately promoted. This was extremely gratifying to the Plaintiff and fueled the desire to learn and grow as a hotelier.

18. On an occasion, the Defendant told the Plaintiff she could never be a CEO or a President of a company because of the lack of a college education. The comments did not sit well with the Plaintiff and only increased her resolve to achieve success. The plaintiff's response to the comments was to provide and

7

Defendant with a list of accomplished persons that were presidents of their companies or in leadership positions that did not have a college Education to include Walt Disney.

19. In 1995, the Plaintiff was offered interest and a limited partnership in a new hotel acquisition.

20. Since 1995, with Landmark Hotel Group in North Carolina and Virginia, the plaintiff was allowed to invest and purchase interest in acquired hotels and property. The Plaintiff used most of her earning to achieve this and has invested an estimated amount of almost two million dollars since 1995.

21. It was expected, by the Defendant, Raj Jain for the Plaintiff to re-invest her earnings.. Even some on the distribution checks received were marked "Inv. Dist.".

22. The Defendant was constantly seeking ways to control the Plaintiff and dominate her professional and personal life. This began early on was through emotional abuse and unwanted sexual advances.

8

23. The Defendant Raj Jain would find Mrs. Pharr's work performance as unacceptable unless she allowed him sexual advances on her. If she denied him, he would create unbearable work loads and everything the Plaintiff was responsible for was unsatisfactory. If the Plaintiff allowed him to press his body on her and or allow him to touch her breasts, he stopped being cruel and than gave the Plaintiff fair evaluations of her work performance.

24. Room inspections and property inspections is how the Defendant began his punishment/ reward  and sexual harassment behavior. If the Defendant found something wrong during an inspection, he would say : Ah...You need to be spanked on the butt for this". At first, the Plaintiff tried to ignore the defendant, but he was serious and if not allowed to touch her, verbal abuse and or overloading work would be the reaction to the rejection.

25. The Plaintiff took the verbal abuse personally. She wanted to perform well.

26. The Plaintiff worked to make sure that where ever the Defendant had an issue, she would learn how to manage and prevent the Defendant from finding fault with her work.

27. Regardless, the Defendant was determined to find fault somewhere new that might be unexpected. After room Inspections, it shifted to accounts payable, than to accounts receivable, and than finally budgeting.

28. The plaintiff enjoyed her work and was very good at it. She was also worried about loosing the job.

29. When the Plaintiff finally managed to minimize any issues the Defendant could criticize, the Defendant began alienating the Plaintiff from her than first Husband. He began to tell her that he was not a good person and that he could not possible love her and that he was not treating her well.

30. Over a period of time, the actions of the Defendant resulted in a poor relationship between Mrs. Pharr and her than first husband. Mrs. Pharr wanted to leave her husband on two occasions and had separated once, the Defendant talked her into staying. It is the Plaintiff's belief that this was to allow the Defendant to continue his control over her.

31. At some point in and around 1995, the Plaintiff, Mrs. Pharr began sleeping with the Defendant, Raj Jain. The Plaintiff hated what was happening. The Plaintiff tried to justify mentally it would be ok. The Plaintiff rationalized in her mind that the sadistic sexual conduct was what she wanted too. Convincing herself of this was the only way she could maintain self-worth.

32. Between 1995 and 1997, the Defendant would make hotel reservations in Chesapeake or Virginia Beach where the Plaintiff would meet him. During December and January, when his wife was out of the country, he would have her park her car in a public parking lot, than have her hide in the passenger

seat. with a blanket over her, and drive her to his house and park in the garage so no one could see that she was there. The Defendant would always purchase large quantities of alcohol for each encounter. The Defendant would go to great lengths to arrange trips together. They traveled to Asheville, Memphis, and Denver together. On each occasion they had sexual relations. On each occasion the Plaintiff dreaded and would try to avoid the sexual relationship.

33. Before the trip to Asheville, the Defendant refused to speak to the Plaintiff. This went on for days before the trip. Leaving the Plaintiff agonizing over what she had done wrong. If and when the Defendant did have any communication, it was harsh criticism about the Plaintiff's work but done more in a personal and demeaning way. By the time the Plaintiff reached Ashville, of which they drove and the Defendant did not speak to her for the first four hours of the ride,  the Plaintiff was an emotional wreck and completed wore down of any ability to say "no" the Defendant's sexual advances and at this point, by submission, the Defendant ended the torture, until the next time..

34. In 1997, the Plaintiff's first marriage ended. The Defendant became involved by selecting an attorney, finding a business appraiser, and offering a great deal of advice on what the Plaintiff needed to do regarding money. He held distributions from being paid during this time to prevent the Plaintiff's astrainged husband from gaining access to her income.

11

35. The Defendant's behavior became absolutely crazed. He expected to have unlimited access to the Plaintiff. The Plaintiff was than shocked and frightened by the Defendants actions. He would call the Plaintiff at all hours. He would say all kinds of crude remarks. He'd want to know how his "pussy" was doing and if "it" missed him. He would call the Plaintiff up and tell her he had an erection from thinking about her and said he wanted to "fuck her all night long".

36. The Plaintiff became distraught, deeply depressed, and suicidal.

37. It was 1998 when the Plaintiff's current and second husband, David Pharr became aware of something wrong with the Plaintiff. He had known the Plaintiff and recognized the seriousness of the distress the Plaintiff was in. He was also able to see that the divorce was not the only thing that was going on in my life and could see through the Defendants actions and motives.

38. In 1998, The Defendant Raj Jain realized the Plaintiff was seeing someone. He became insanely mad. He claimed I was "cheating on him" and "I betrayed him".

39. The Plaintiff confronted the Defendant and told him he had no right being upset and to leave her alone. She told him, when he left his wife, Suchetta Jain, than he could discuss her personal relationships, other wise, she explained to him, leave her alone.

40. The Defendant, Raj Jain, in retaliation, stripped the Plaintiff, Michelle Pharr, of her partnership interest in the Country Inn and Suites located on the Virginia Beach Oceanfront in Virginia Beach Virginia. He did this following a meeting at the afore mentioned hotel. The Plaintiff was devastated. She had worked so hard to earn that interest. She returned home that evening. Mr. Pharr was waiting there when she arrived. She explained what happened. Mr. Pharr expressed he felt it was because of him.

41. The Defendant maintained a severely hostile disposition toward Michelle Pharr for a very long time. He would be cold to her in public and if a conversation was had, it was short and words that were used were harsh.

42. The Plaintiff wanted to plan a marriage to Mr. Pharr but was afraid to do so for fear of what the Defendant might do. The Plaintiff's work was everything she had. Fearful of further retaliation, the Plaintiff declined proposals from Mr. Pharr.

43. The Plaintiff became pregnant before her and Mr. Pharr were married.

44. The Defendant, learning of the pregnancy openly expressed his anger, even in front of one of the Plaintiff's male counter parts, Mr. Raj Rahil.

13

45. The Defendant began trying to resurrect the control he had over the Plaintiff. He began finding reasons with her work to "punish her". This time it was heaping up piles of work and than expecting unreasonable deadlines. Setting her up to fail. When she did, he was brutal in attacks of humiliation, both over the phone and in persons. Sometimes in front of people.

46. The Plaintiff was working very hard trying to regain a professional relationship with her boss. Mr. Pharr knowing his presence was being taken out on the Plaintiff, offered his skills and trades with hotel projects that would look out for the interests of the company and controlling mechanical related expenses.

47. Despite the efforts of the Plaintiff, the Defendant made another attempt to get the Plaintiff to sleep with him again. He wanted her to meet him in a hotel on his birthday, March 15, 1999.

48. The Defendant was causing intense pressure and hostility on the Plaintiff. The Plaintiff,, now five months pregnant, afraid to marry the father of her baby, agreed to meet the Defendant.

49. The Defendant had made arrangements to meet the Plaintiff for a sexual encounter at the Holiday Inn on Newtown Road in Virginia Beach Virginia. The Plaintiff left North Carolina to drive to Virginia to meet the Defendant. The Plaintiff was now seven months pregnant.

50. The Plaintiff did not drive to meet the Defendant, instead of exiting off of route 168 onto Hwy 64 East toward Newtown Road and the Holiday Inn Executive Center, she continued going straight ahead and ended up in downtown Norfolk. She checked into the Clarion Hotel and spent the entire day crying and completely distressed over what would happen next.

51. The Plaintiff's cell phone began ringing with calls from the Defendant at or about the time she was to meet him. The calls kept coming from him. For what ever reason, he became concerned enough to call the Plaintiff's husband to help locate her.

52. After an hour or so, the Plaintiff's cell phone began ringing from her husbands work number or cell number. Eventually the Plaintiff returned the call of her husband and he drove to Virginia from North Carolina to pick her up, leaving her car there in Norfolk to be picked up at a later time. It is difficult for the Plaintiff to remember all the details of the conversations that followed, she was overwhelmed with the circumstances.

53. After this incident, the Defendant Raj Jain, with drew from his narcissistic behavior and treated Mrs. Pharr in a more professional manner. From 1999 to 2007, the Plaintiff, Michelle Pharr was able to thrive under these new circumstances.

54. The Plaintiff Married David Pharr on May 1st of 1999. The Plaintiff and Mr. Pharr celebrated with an intimate church wedding. Mr. Pharr insisted that the Defendant and his wife attend the wedding. They did so. Mr. Pharr expressed to the Plaintiff that he, (David Pharr) made Suchetta Jain a happy and relieved wife. Mr. Pharr knew the Plaintiff was dedicated to her work. Mr. Pharr also expressed that he, by contributing his mechanical talents to the company, would elevate the Plaintiff's perceived value and the two together would allow the Plaintiff to be considered (as close as could be achieved) equal to her counter parts, Akhil Jain and Raj Rahil.

55. The Plaintiff was skeptical of what Mr. Pharr was saying was true, but it did prove to be the case as the Defendants Rajnish Jain and Landmark Hotel Group put him to work with minimal compensation for his services. Mr. Pharr is licensed in electrical, HVAC, Plumbing, and most all environmental licenses with regards to water and waste. At one meeting the Plaintiff and Mr. Pharr had with the Defendant Mr. Jain, Mr. Jain claimed that he now owned Mr. Pharr.

56. The Plaintiff gave birth to her first child July 9th, 1999 and her second child on March 12, 2001.

57. In March 2001, the Plaintiff was working on a hotel renovations project that required a franchise compliance inspection. The hotel inspector scheduled the inspection for the same day as the scheduled delivery date for the Plaintiff's baby, March 8, 2001. The plaintiff was encouraged by the Defendant to change the delivery date to accommodate the inspector. The Plaintiff, looking to maintain good favor with the Defendant did as she was asked and changed the delivery date to March 12, 2001.

58. The Plaintiff's father was admitted into the hospital on or about the first of March. The Defendant discouraged her from going to see him before he passed as to prepare for and to attend the inspection and than also from attending his funeral on or about March 22, 2001 so that the Plaintiff would not be gone from work.

59. From 2000 and through 2011 the Plaintiff and her husband worked on many projects for the company. The Plaintiff over saw a Hotel re-licensing and renovation project. The Defendants used the Plaintiff's husband on these projects. With children at home, the Plaintiff worked during the day and the Plaintiff's husband would work in the evenings, after working all day at his job with NCDOT. It became a concern that the other Partner's spouses were not out working into the night for the company.

60. In 2001, the Defendant, Raj Jain and his wife became occupied with the efforts of finding a wife for their son, Akhil Jain. This took several trips to India. By 2001, the had found a young lady for their son, Nita Jain, and announced his engagement. The wedding plans began immediately and Akhil and Nita were married on January 5, 2003. The Plaintiff and Mr. Pharr were invited and did attend the wedding in India.

61. Later in the year, on or about May or June of 2003, the Defendant, Raj Jain, held a reception for his son, Akhil and new daughter-in-law, Nita, at the Crowne Plaza Hotel, (A Landmark Hotel Group Property). The Defendant had friends and family from all over the country attend. There was about 400 guests in attendance. The event was a formal sit down dinner followed by dancing and music in the Gallery. The Defendant was addressing his guests before dinner service and in customary fashion presented his son's bride to the room as MICHELLE. You could hear all 400 guests gasp at the same time. The Plaintiff and Mr. Pharr pretended not to hear. The Plaintiff discussed it briefly with her husband after leaving the party. The Plaintiff had been working so hard that she had not paid attention to the fact that the Defendant might still be obsessing about her.

62. The months to follow the reception miss-hap were awkward and uncomfortable to the Plaintiff. The Plaintiff was often with family members of the Defendant for the purpose of doing business. The Plaintiff was often shut out of situations that interfered with her ability to do her work.

63. In 2004, the Defendant was engrossed in handling matters between Mr. Jain and his daughter-in-law.  They were not getting along.  As customary in the Indian Culture, the son and his wife lived with the parents. Mrs. Jain thought Mr. Jain coddled the new daughter-n-law too much and was angry about it.  It was during this time that the Defendants son was attending Cornell University for a two year masters program.  The daughter-in-law eventually moved into an apartment with the son for the second year.

64. In 2006, after Defendant's son completed school, the Defendant Mr. Jain and his wife were in struggle over Akhil and Nita wanting to buy their own home. By 2007, Akhil and Nita purchased their first home for 900,000.00.  Mr. Jain lost his patriarch status as his son deviated from their Indian Culture.

65. The Plaintiff is aware of all the afore mentioned details in paragraph 52 through 56 as the Defendant would call and discuss these matters with her.  If he was upset, the Plaintiff knew it was best to sit and listen rather than to cut him short and allow him an opportunity to come back with a proclaimed list of things that needed attention and or neglected by the Plaintiff.  It was once stated by the

Defendant, during this time period that the Plaintiff, Michelle Pharr was the number one most dialed contact on his cell phone. Up until this point, the Plaintiff thought he called her counter part Raj Rahil in the same manner, but that was stated by the Defendant not o be the case.

66. In 2007 and early 2008 the Defendant began again, on occasion, to make unwanted contact. He touched the Plaintiff's leg in the board room.

67. The sexual advances starting coming more frequent and started getting more obvious and aggressive. Mrs. Pharr told him to stop. She told him to leave her alone.

68. When the Defendant was alone with the Plaintiff, he would walk up from behind her and run his hand down her shirt. On one of these occasions he ran his hand and caught it on her pearl necklace. The force of his hand broke the necklace and bruised the Plaintiff's neck.

69. Once and sometimes twice a month the Defendant would reach out and grab Mrs. Pharr's breasts and squeeze very hard. The thought of these past incidents causes the Plaintiff to hurt deep in her breast tissue. It has effected the intimacy with her husband. She immediately gets defensive when her breasts are touched. She immediately becomes defensive. Her immediate reaction is to thrust away her husbands hands.

70. On one occasion traveling to Washington D.C. for business, the
Defendant asked the Plaintiff to come to his room,   On another occasion at a
Hotel Conference, he wanted to go to the Plaintiff's room, This was in Nashville
Tennessee. The Plaintiff did not allow either event to occur and future trips were
planned to include husband and when appropriate their children.


71. When the Plaintiff was asked to meet the Defendant at his home, where
he conducted LHG business and is the registered address for the LLC, Mrs. Pharr
would take other people with her. She would take her children, co-workers, and
has even traveled with her grandmother to prevent unwanted sexual advances
from the Defendant by eliminating opportunities of being alone.


72. The rejection by Mrs. Pharr was causing the Defendant to escalate his
intensity of sexual advances. Raj Jain made it clear that he desired to have sex
with her again.


73. When Raj Jain would be close to Mrs. Pharr, even in a crowded room, he
would tell her his penis was hard and wished she could touch it.

74. In events that they were alone, Raj Jain would touch himself and beg Mrs. Pharr to touch him. Since 2008 these events occurred at regular monthly partners meetings and on location with property specific site visits.

75. Mrs. Pharr would try to choose locations to meet that would prevent him from making crude advances.  Even in Raj Jain's corporate office, he would get a thrill out of attacking Mrs. Pharr and grabbing her. The "almost getting caught" actually made it more difficult because it seemed to excite him more.

76. The emotional distress the defendant created despite the fact he knew she had recently lost her mother-in-law and her husband was battling several serious medical issues.  He would constantly change her priorities keeping her from being able to complete her work.  He refused to hire additional help she needed.

77. The worse thing of all was the tone in the Defendant's voice he would use when he wanted to be abusive.  It was all to familiar.  It was the tone he used when he found out the Plaintiff was with Mr. Pharr.  The tone he used when he took away the Plaintiff's partnership in one of our hotels, it was the tone he used when he wanted to degrade or humiliate the Plaintiff.  IT WAS THE TONE HE USED JUST BEFORE HE INFLICTED PUNISHMENT ON THE VICTOM.

78. The Defendant's tone used on the Plaintiff would render her afraid and mental and emotional traumatized.

79. Finally, the Plaintiff, Michelle Pharr was forced to make a decision. She was either going to have to circum to the advances and have sex with the Defendant or she would have to resign.

80. This time was different. After all the things the Plaintiff had to endure over the past two years in professional challenges and accomplishments, in personal hardships, and the Defendant's calculated decision to keep ratcheting up more and more his aggression on the Plaintiff, seeing she had done all, reaching further beyond her own capabilities, she realized all that she could do or had done was not going to be enough. The Plaintiff finally took a stand to not repeat and make a change.

81. The Plaintiff contacted her attorney, from an environmental matter, who she considered a friend and knew to be a Christian. He suggested to begin a dialogue.

82. On July 14, 2010, Michelle Pharr, under great emotional pain and distress, e-mailed Raj Jain at or around 8:00 am her intent to end her employment and asked for her investment be returned to her. The Plaintiff knew that by

sending the e-mail she would be ending her career. She knew how Mr. Jain would

perceive it, as"betrayal".


83. Raj Jain was the president of the company, there was no one else

available to her in the company that she could report. She felt like giving up her

life's work was her only option in order to remain faithful to her husband.


84. The Defendant was in North Carolina to see the Plaintiff the next day

after receiving her e-mail.  He begged her to stay.  He claimed he could not live

with out her as her contribution to Landmark Hotel Group had become too

valuable and he needed her. .  After spending time with her, he pulled out his

penis and began masterbating in front of her.  Horrified she left the room.


85. The next day the Defendant called the plaintiffs husband and told him to

take Mrs. Pharr out of town for a few weeks, that she was stressed and in need of

time off.


86. On July 24 2010, the Plaintiff contacted her attorney to let him know

that the Defendant was not listening and that she was going to need some help.

87. The Plaintiff took several weeks off with her family. Mrs. Pharr was completely destroyed emotionally. When Mrs. Pharr returned the Defendant was out of the country for several weeks on a planned Alaskan Cruise. There was no contact again until late September.

88. While the Defendant was out of the area, the Plaintiff Michelle Pharr contacted an attorney for help. Mrs. Pharr knew Raj Jain was not going to accept anything she said and needed legal assistance.

89. The attorney advised her to collect as much information while she was working as possible. Mrs. Pharr did so through October and November, Even though it was difficult because she sensed Raj Jain was angry over the July 14th letter and was not making her life pleasant and she feared further retaliation.

90. On December 22, 2010, the Plaintiff's attorney called the defendant to discuss the sexual harassment issues and Mrs. Pharr's concern that her only remedy was to depart the company.

91. The next day, on December 23, 2010, Raj Jain terminated Mrs. Pharr's employment for what Mrs. Pharr believes to have been; exposing his conduct of abusive behavior, sexual harassment, sexual discrimination, creating a hostile workplace, and his intentional infliction of emotional distress, to her attorney.

# COUNT ONE

# VIOLATION OF TITLE VII

# SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT

92. The Plaintiff incorporates all information and allegations contained in paragraphs 1 through 86 as if fully set forth herein.

93. As a female, Plaintiff is a member of a protected group.  As a result of Plaintiff's protected status, commencing throughout her employment, beginning in 1992 and most recently and aggregiously from the end of 2007 to December 2010, Mr. Raj Jain routinely humiliated and degraded the Plaintiff with a persistent pattern of severe sexual harassment as set forth herein, which created a hostile and offensive workplace environment that was permeated with discriminatory intimidation and degradation.

94. The EEOC defines "Ongoing Harassment" In harassment cases, that the Plaintiff must file your charge within 180 or 300 days of the last incident of harassment, although EEOC will look at all incidents of harassment when investigating your charge, even if the earlier incidents happened more than 180/300 days earlier."

26

95. *Harris v. Forklift Systems, Inc.*, Justice Scalia, provided an analysis directed at the determination of whether conduct could be considered severe, expanding on the explanation in Harris of what is to be considered when objectively viewing the totality of circumstances. The determination should include careful consideration of the social context in which the behavior occurs, [because] the real social impact of the workplace: "behavior often depends on a constellation of surrounding circumstances, expectations and relationships which are not fully captured by a simple recitation of words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing ... and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive."

96. That the Plaintiff's reaction to the Defendant's Sexual Harassment was the sum of the totality of all the years of abuse and degredation afflicted upon the Plaintiff. The post tramatic stress brought to the forefront of the mind the pain and suffering of the first incident as if it were the last sexual harassment encounter by the Defendant.

97. Mr. Raj Jain was the Owner and President of Landmark Hotel Group and the managing member with absolute control of every aspect of the partnerships and hotels. Raj Jain was Michelle D. Pharr's immediate supervisor with no one

beyond him to report the sexual harassment and discrimination.  Raj Jain had total
authority over Mrs. Pharr to hire, discipline, evaluate, and fire.

98. Mrs. Pharr was an invested partner and given the title of Vice President,
however Mrs. Pharr was never treated the same as what would be her male
counterparts Akhil Jain, and Raj Rahil.  While they were deemed as partners and
treated as such. Mrs. Pharr was always treated as an employee by Raj Jain.
Despite her successful accomplishments for the company, she was treated more
harshly and expedited to do more work by Raj Jain than he expected from the
other partners. The Plaintiff was treated lower class and expected to be the
General Manager of operations, be the Vice President of Operations, be the
Company Programs Director, Send her husband to work all night for the company,
and full fill community obligations serving on local boards, as well as assist and
help the Virginia Partners get their projects under control.

99. The harassment was unwelcomed.

100.    Plaintiff was subject to the harassment because of her sex and it
unreasonably interfered and altered a term, condition or privilege of Plaintiff's
employment, including but not limited to, Plaintiff's doing her job with out
interruption,

101.    Despite the Plaintiff's pleas for the sexual harassment to stop. the Defendant seem to deem it his right to do so and that the Plaintiff should be obligated to accept his sexual advances.

102.    The Plaintiff, as a direct result and proximate cause of the Defendant's conduct, has suffers substantial damages, including, but not limited to. loss of income, pain and suffering, mental anguish, loss of enjoyment of life, emotional distress and other nonpecuniary losses.


## DEMAND FOR RELIEF


**WHEREFORE,** Plaintiff, Michelle D. Pharr, respectfully demands judgment against Defendants, Rajnish K. Jain and Landmark Hotel Group, LLC for front pay in lieu of reinstatement, back pay, compensatory damages, punitive damages, prejudgment interest, cost of this action, and such other relief as this court deems just and proper.


## COUNT TWO


## VIOLATION OF TITLE VII


## Sexual Discrimination Based on Gender

## Wrongful Termination

### And

## <u>RETALIATION</u>

103.    Plaintiff incorporates all allegations and all information contained in Paragraphs 1 through 102 as set forth in.

104.    The Defendant violated Title Vii by retaliating against the Plaintiff when she refused his sexual advances.  The Defendant would punish the Plaintiff with impossible tasks and deadlines and publicly humiliate her. With such practices constituting an unlawful employment practice under 42 U.S.C.A. Section 2000e et seq.

105.    Defendant for documenting his sexual harassment in writing on July 14, 2010.  That evidence in this case, produced through discovery, will show that the Defendant began at that point to create "damage control" and work to "contain" the Plaintiff.  That on July 28, 2010 the Plaintiff promoted his son, Akhil Jain to the Position of President of Landmark Hotel Group in order to put a layer of separation between the Defendant and the Plaintiff on paper **(Attachment D and F),** but still maintained control by asserting his authority to do so through an E-Mail dated

30

July 28 from Mr. Jain to Mrs. Pharr, (**Exhibit F**) and there fore allowing him to apply even more pressure and access to the Plaintiff.

106.    The Defendant violated Title VII by retaliating against Plaintiff when she had her attorney contact him on December 22, 2011 to discuss his actions and an exit plan for the Plaintiff.  The Defendant outraged that the Plaintiff had made public his indiscretions he terminated her employment the following day.

107.    With such practices constituting an unlawful employment practice under 42 U.S.C.A. Section 2000e et seq.  Defendant took tangible adverse employments actions against Plaintiff, by terminating her employment one day after her attorney wanted to discuss his conduct.

108.    The Defendant, Raj Jain, has denied the Plaintiff her partnership rights and has with held her distributions and has continue to cause financial suffering.  The Defendant has refused the Plaintiff her right, as a partner, to review financial records of the partnerships.  The refusal of rights have been done so in retaliation for making complaint and making known the Defendant's actions and the Defendant is in violation of the Virginia Limited Liability Company Act § 13.

109.    As a direct, proximate and foreseeable result of the Defendant's actions, Plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconveniences, mental anguish, loss of enjoyment of life, loss of

110.    dignity, emotional distress, and humiliation and other nonpecuniary losses and tangible injuries.

## DEMAND FOR RELEIF

**WHEREFORE,** Plaintiff, Michelle D. Pharr, respectfully demands judgment against Defendants, Rajnish K. Jain and Landmark Hotel Group, LLC for front pay in lieu of reinstatement, back pay, compensatory damages, punitive damages, prejudgment interest, cost of this action, and such other relief as this court deems just and proper.

## Intentional Affliction of Emotional Distress

Plaintiff incorporates all allegations and all information contained in Paragraphs 1 through 110 as set forth in.  That the Actions of the Defendant caused emotional Distress.

## DEMAND FOR RELEIF

**WHEREFORE,** Plaintiff, Michelle D. Pharr, respectfully demands

judgment against Defendants, Rajnish K. Jain and Landmark Hotel Group, LLC

for front pay in lieu of reinstatement, back pay, compensatory damages, punitive

damages, prejudgment interest, cost of this action, and such other relief as this

court deems just and proper.

## DEMAND FOR JURY TRIAL
Plaintiff respectfully demands a trial by jury for each count of the Complaint on all

issues so triable.

Dated: April 13, 2012

_____

Michelle D. Pharr, Plaintiff

Michelle D. Pharr

Plaintiff

533 West Ocean Acres Drive

Kill Devil Hills, North Carolina 27948

T: 252-202-6274

Michelle@obxh2o.com

33

VERIFICATION PAGE

I, Michelle D. Pharr, hereby state and confirm, under penalty of perjury that I am over 18

years of age.  That I have personal knowledge of the facts asserted in this entire

document, Amended Complaint, filed by me and that the said facts are true to the best of

my knowledge and belief.


_____4- / 3-/2_____

DATE

Michelle D. Pharr


Dare County,
State of North Carolina


Signed and sworn to before me this 13th day of April, 2012


My Commission expires:

Notary Signature

_____6/30/2016_____

Kimberly G. Willis
Notary Printed Name

Kimberly G. Willis
Notary Public
Dare County, NC
My commission expires 6/30/2016

## CERTIFICATE OF SERVICE

I here by certify that on the _13th day of __April, 2012, I filed this Amended Complaint in the United States District Court for The Eastern District of Virginia, and will serve the Defendant by U. S. Mail at the following address.

Bryon C. R. Skeen
Wilcox and Savage
440 Monticello Avenue
Wells Fargo Building
Norfolk, Virginia 23510

This the __13th_day of _April__ 2012.


Michelle D. Pharr
533 East Ocean Acres Drive
Kill Devil Hills, North Carolina
252-202-6274
michelle@obxh2o.com